Altisource Asset Mgmt Good morning. May I please have the floor? Good morning. Kevin Green, on behalf of Allen Family Employees Retirement Plan. And I'd like to present three minutes for rebuttal. Granted. There's an adage in the law that goes something like this. I'll give you substance, and I'll take procedure, and I'll beat you every time. This case illustrates that that adage is not always true. Because all procedural rules, on leave to amend, at the pleading stage, especially, favor complaints. And this could really be a simple argument of 60 seconds, that if I were to slice it, district court here needed to grant leave to amend, under the circumstances presented. But didn't you present your proposed, further amended complaint, and although it was not admitted, that the district court reviewed that, in saying this amendment would be, no point to it. Wouldn't solve the problem. The district court did, and we believe that's erroneous. It was a somewhat cursory analysis of a couple of pages. And at that point, I think the record indicates pretty clearly that the judge was done with the case. And I understand the judge expressed some irritation with the initial proposed amendment complaint. That included some more processing errors, but that was corrected on compliance and further motion for leave to amend. Your Honor's question goes directly to futility. And we have three issues that were represented on appeal. Only two of which the district court addressed. Falsity and lost validation. And I want to step back for just a second to the factually, contextually, how this arose. And factually, this is a complicated case. It's got an alphabet that's suited to acronyms. But the resolution, again, I think ought to be straightforward. Our opponent is in the middle. Before we get into the issues of falsity and lost causation, just as a threshold matter, you seem to be arguing that Third Circuit law here mandates leave to amend. And we should be treating a consolidated complaint like a first complaint for purposes of Rule 15. What authority is there according to that composition? First of all, yes, to clarify, I'm not saying that there's an absolute right to leave to amend. Of course, there is not. I would say it's about 90, 95% on this record. It's a very strong right for a number of reasons. The judge dismissed for insufficient particularity as to the statements. The judge made some significant conclusions in the motion to dismiss order. The district court ruled that he pled the true facts. In other words, my statements are false. And that's significant under Third Circuit law. Lost causation, you haven't given me enough on the related party transactions and conflicts of interest. And that also goes to particularity. And Third Circuit law, I will not say it's absolute because it's not. But it's very strong that leave to amend is granted under those circumstances. Now, Judge Roth, the question goes to, well, what difference does it make? Because the proposed amendment complaint was in the record. And that's where this case really went sideways, I think. Because all of this really should have just been litigated in the district court. In response to the motion for leave to amend, actually the judge didn't grant it, the defendants responded that, well, the complaint shouldn't be allowed and reserved arguments on the utility. Saying we're not going to address those now because that complaint hasn't been filed. And so we're in a somewhat awkward posture where that is the outcome of a complaint and it's being treated as such. But the district court looked at it just in a, frankly, very cursory fashion. Well, you're saying that because they decided against you. But there's nothing to indicate that during the three days that the court had to propose an amendment complaint, it wasn't carefully considering what was said there. And with the court's knowledge of why the previous complaint had been insufficient, were these problems solved? And I think the court certainly had plenty of time under the circumstances to give a very thorough examination to what had been added in the proposed amendment. I think the court had time. You say it didn't have time because it was decided against you, but isn't that delving the procedure from the result you don't like? I'm simply saying that the court determined futility in a complex securities case in three pages. But the court was very familiar with the case. Yes, but the question on the overall view of this, of futility, is whether that will be the surroundings. All right, what is it that you say that AAMC should have disclosed that they didn't disclose, that constitutes the falsity? Well, the complaint is comprehensive, starting at Joint Appendix Basis 32. Can you move your microphone up a little bit? I can give the court a couple of examples of what was not disclosed and what was said that was false. Well, tell me what it is. Sure. For example, starting at Joint Appendix, page 632. And the principal criticism in the dismissal order was, you're talking about other companies. Now, these are all more intangible to each other. I understand. But you haven't given me enough as to AAMC. And respectively, the proposed amendment complaint does that. And, for example, at page 632 of the Joint Appendix, AAMC, and I'll try to keep reading from them, held a conference call where it said, Can you read a little slower? I feel like you're running your words together. Understood. That the key to our model is the existing operating infrastructure of our partners where Auckland provides the non-performing law and services of the residential area. What about that is false? Let's go to the part of the matter on falsity as to servicing representations. Because the nature of those statements seem, at worst, to be potpourri. And as to other statements, they're simply factual recitations of the way the servicing agreement works. How do we have actionable falsity? It's actionable falsity because Auckland, between 2010 and 2014, grew tenfold and couldn't service all loans. And defendants, and this is AAMC, and their complaint... Well, weren't they the largest servicer of these loans in the country? I think by 2014, but there's tenfold growth that they can't manage. And they're telling the public, even if that were disclosed, does their servicing have to be perfect? It doesn't have to be perfect, but you can't tell the public that everything is okay with Auckland. When you've got a defendant or he's the chairman of Auckland and related companies and so he's the publicist. At least it's a reasonable interest. That the servicing capabilities... I'm at the Joint Appendix, not page 640. The servicing capabilities of Auckland are superior to other servicers. And this is in 2014, and by that time, Auckland is being investigated by 4950 State Attorney General. And its own technology officer says our technology is a train wreck, we can't service these companies. But is it worse than other companies? I mean, the statement is that Auckland is better than other servicing companies. But nothing's said about that. They're just complaining about that Auckland can't do it. But the statement that you're claiming is false is that Auckland is better than the others, isn't it? In a minimum, it's misleading. I mean, to say it's superior to other servicers... Well, maybe it's better than the others. I mean, how do we know? I think it's a disputed factual issue among many. But there's no evidence as to whether the others are adequate or not. I would love to take this to some re-judgment and... And so how can you say, if there's no evidence whether Auckland is better or not better, how can you say it's false to say it is better? We don't know that. Well, again, I think that Your Honour just stated that we don't know that because we don't have a record on it. But at a minimum, it's misleading. And so I see my time is running down. And I just want to emphasize that... We'll be generous with the time here. We understand there are a number of issues to cover. And we welcome your assistance and your colleagues working through those issues. Thank you, Your Honour. The proposed amendment complaint addresses the District Court's principal criticism on the lack of particularity. The statements are identified as stated in the statement. At a minimum, they are misleading when Auckland is coming apart, it seems, by 2014, and then defendant Irby needs to resign as chairman of all companies in early 2015 when the class period concludes. The statements that you point us to are things like, it provides significant competitive advantages. Auckland has established a stress mortgage loan servicing technique and platforms. We intend to capitalize on the servicing capabilities, which we view as superior relative to other servicers. It provides a competitive advantage. Isn't that the classic general kinds of statements that are categorized as either puffery or statements of opinion? I don't think so, Your Honour, because it's central to the business of what they do. There are statements made on conference calls with analysts and others because they are material, they are important to investors. And, in fact, that conclusion was correct and the Martin Court must have gotten it wrong on that. And this case is, I don't have a chance to get into this, but is factually, I think, closest to Martin, except, of course, that Martin is RASI, understood, but is largely the same case in that respect. Now, going back to the Internet... In the Southern District of Florida, we've done a very different conclusion on this same issue. Under different circuit law. But what I'm saying is that Martin is the closest case because of the link between AAMC and RASI. But the district court acknowledged and has dismissed the court. The district court said, you've shown the nexus between AAMC and RASI, and RASI and Hopkins. But what you haven't given me are false and misleading statements as to AAMC. And a proposed defense complaint does that along with false accusation. Now, I'll leave it to Amanda. The touchstone is, very familiar, is prejudice. And the defendants don't argue that there could be prejudice here in considering us. And from the plaintiff's side, we're in a difficult position now. Let's come back to falsity. I want to make sure I understand your argument. You seem to be claiming that the statement says that servicing are false because ACWA's servicing was not a benefit, was not superior, but in fact was a liability. Where do you plead that there was any adverse effect as a result of the problematic servicing on either RASI or AAMC that would support the notion that representations that it's servicing provided a benefit were false? I think the effect is shown among other ways by the loss causation of the stock price from nearly $1,000 a share to around $300 million in the class period as the truth came out. But what is the incident? What caused the loss? What revelation was it that caused the loss? ACWA grew tenfold in four years, between 2010 and 2014, by its own discretion. And technology is really key because AAMC, in one example, Joint Appendix 640, emphasizes Auckland's superior technology, when in fact Auckland didn't have the technology to service those loans to the detriment of homeowners. So that's why AAMC regularly gets involved nationally. So what caused, there was publicity then about Auckland's inability to service. Why would that affect AAMC's stock price? Bitterly. But that worst description, and as alleged, these companies are all interrelated, AAMC, because its only client is RASI. Can we have loss causation on such a vague description of what the problem was? Loss causation is detailed at Joint Appendix page 656. I'm not going into details, but I don't think it's vague. It goes into, and it's really vague, but it goes into detail as to how the stock price fell in response to growth. But doesn't the fact that within a month the stock price rapidly climbed, doesn't that show that the information about the CFPB settlement was immaterial? It jumped higher than it went down. Within 30 days. That's one event affecting the stock price. And on loss causation, I don't have a decision in my head, but there needs to be a full record. In a case like, say, I think it was McCabe, in a summary judgment to determine, say with an NSTUDY, what caused the co-op to ultimately go down on a good day. But this is where we need to distinguish between statements that may merely reflect price and that are actually causing loss and contribute loss causation, as that term is. Frank? Yes, Commissioner. And what specific allegations can you point us to in this complaint that reflect that Aukman was not adequately servicing Resy's non-performing loans? The New York Department of Financial Services investigation was so concluded and acted to protect borrowers. And I don't know if I have that highlighted, but I can provide that site on the bulletin. But that was just one of the regulators that drew the conclusion that Aukman was in a perilous position in terms of servicing these loans. Talk to us about the related party transaction policy. Here, the district court concluded the problem was you couldn't point to a specific transaction, even in the proposed amended complaint. So how specifically would Aukman be pleaded that the related party transaction policy as to AAMC is false? I believe that it's alleged, Your Honor, that there's one transaction, for example, a $65 million transaction involving insurance. The $65 million floating in the coffers of AAMC that was approved by defendant Irving, even though he said he would refuse himself, and that's alleged. It's on page 624, 658, and 661. And discuss it with my colleague. Isn't that a specific transaction, the one you identified with ASPS? It could be, Your Honor, but I'm going to ask this. One of the related companies. But identifying a specific transaction as to other related companies doesn't answer the concern of the district court or the question I'm asking now about what specific transaction involving an actual conflict is pleaded as to AAMC. I think that's a conflict because the chairman of all these companies said he would refuse himself from all related party transactions. And he didn't do that. He may not have as to other related companies, but what is pleaded that he did not do that specifically as to AAMC? Your Honor, I think the example I've given answers that by what he, defendant Irving, told investors. I don't have other examples in my fingertips at the moment. But in this litigation involving AAMC, don't we need to see how AAMC is affected rather than one of the other corporations in this broad spectrum of related companies? Unquestionably, yes. What are you pleading? Certainly there's a drop in stock price when there are announcements of significant settlements. But those are things that one typically sees in the marketplace. What is pleaded to support the notion that the decline in stock price on lost causation as to the related party transaction policies resulted from corrective disclosures about the related policy transaction? Yes. In terms of proximity of time, there's the December 2013 investor conference that's discussed in the point where investors are told that defendant Irving, who is the founder of them and the chairman of all these companies, will accuse himself of the related party transactions. For example, during appendix at page 655, just two weeks later, the CFPB comments that Auckland violated consumer financial laws at every stage of the mortgaging process. That's not even specific as to the conflict, though. Even if your allegation is that there were false representations that inflated as to the policies around related party transactions that inflated the price, what have you pleaded as to lost causation that ties back to those false statements? Your Honor, I can only refer to what's the last year and how the corrective disclosures, that they are corrective disclosures, how they came out and affected the stock price. The complaint may be stronger in some respects than others. The district court didn't dispute Auckland's servicing capabilities diminishing by 2014, even though defendants filled the market. And this is ABMC, this is not like our other enemies, that they provide superior technology when in fact their technology, as they described it, wasn't actually framed up by that time. You know, the district court had this case. They had your initial complaint, they had your proposed amended complaint, they looked at it, and they essentially said that you can't prove, even with the amended complaint, you can't prove falsity, and you can't prove lost causation. That's essentially what the district court said. You showed us your second proposal and you still haven't gotten there. You know, we're reviewing this, we're reviewing the district court's determination on futility. I haven't heard anything yet here this morning as to why the district court was wrong, that giving you another chance is futile. That's what we're here to look at. Well, I can't do anything further than refer the court to the complaint beginning at 632, that please statements by AAMC that were in the minimum justification. And in that respect, the decision was erroneous. Okay, and notwithstanding falsity and lost causation, the other side, Cambridge, is going to argue that in addition to that there was no scienter. Correct. And that's properly before us with our plenary review. I haven't heard anything here this morning that establishes scienter. Scienter, the court is familiar with the principle known as the core operations inference and on the facts here, where RASI was so closely tied to AAMC and RASI and so on, it's really the only operation of AAMC. And Defendant Irby is the chairman of all these companies. And so it's a reasonable inference and a strong inference that he knows what's going on. It's just the court didn't address that issue. And Your Honor, I'm glad you asked that question because I think if the court were inclined to send this case back, it has options. It can hold the complaint sufficient in its entirety. It can hold that it's sufficient on the issues addressed only by the district court and send it back. But either way, on the means of a man, it should have been allowed here in the district court. And now we're in a difficult position of a brief in scienter for the first time on appeal. We shouldn't have been here happened. If you don't have the other two, you don't have a falsity and lost causation. Doesn't make any difference whether you have to enter. That's correct.  Right.  Okay. Thank you. Mr Carlson. Morning, Your Honor. Walter Carlson on behalf of the Alamo Source Asset Management Corporation. And I'll be presenting arguments this morning on behalf of our client, AAMC, as well as the other defendant, Mr. Irby, which are the only two defendants who were served in this case. Judge Varlo's decision denying me the compendium was correct and should be affirmed. As Judge Varlo held, Plato's proposed amended complaint was not a stated claim The court should affirm for several reasons. First, and most directly, as Judge Varlo held, the proposed amended complaint does not allege a false statement by AAMC as required by the DSLRA. In addition, his decision can be affirmed on two independent grounds. The complaint does not properly allege lost causation, nor does the complaint plead with particular facts that support a strong inference of science. Counsel, we have expressly stated that the fact that a complainant has had three bites at the apple is not a justification for dismissing a complaint of prejudice. Yet the district court here, in almost using those terms, articulated that as part of its rationality. Doesn't that suggest that we should be reviewing this decision with particular scrutiny? I think Your Honor should give the same scrutiny to this decision that you give to any appeal that comes before you. And that is a plenary review, is it not? Well, there are two steps to this. The first is that the general matter of the decision I will leave to amend is to reduce discretion. But where the decision is made on the proposition of the amendment to the complaint is futile, then you engage in a plenary review. So I agree with Your Honor that that's the scope of review. But is it particularly strict or different from what you normally do? Because Judge Farrell considered the initial complaint, wrote a thorough opinion, and knew complaints, but before him that he had every opportunity to see and review and consider against what he said should come before you. It's not a stricter standard. It's not a normal standard, as I just said. But you would agree the mere fact that there have been prior complaints is not a basis for denoting to amend? So I think the fact that there had been an amendment is relevant to the court's analysis of this case. There was an initial complaint. There was an amended complaint filed in June of 2015. That was not the same complaint. It was an amended complaint. It changes the procedural posture. So when Judge Farrell ruled fully on that proposed amendment to the complaint, and the plaintiffs then allowed him he was fully entitled to look at that and say, this is futile. This was the... The only difference between this case and the precedent from the court of the N. Ray L. Farrell securities litigation is that here the plaintiffs proposed an amended complaint. In that case, the court said, listen, you were appointed lead counsel. You had the opportunity to file an amended complaint. The court considered it fully, and then you say you got more to say. No, you don't have more to say because what you have to say would be futile. So I think it is a little different than just having one complaint. Your... I understand here is I made the point in the briefing that when we're talking about a consolidated complaint and in this context where the lead counsel has been appointed and then is filing a consolidated complaint on behalf of all plaintiffs that that should be viewed akin to an initial complaint. I don't think that's correct. I think the court addressed that in the N. Ray L. Farrell decision. Because there was a lead counsel appointed, lead counsel had time to go do their investigation and choose the best thing that they had to bring forward. They put that forward before Judge Bartle. Judge Bartle ruled. It was unclear whether his ruling was with prejudice or not. It was silent on that point. And then they bring the complaint forward. I don't think the judge is then required to say, we need to go back into full briefing if the judge reviews it and concludes that it is futile. Um, with this address of futility issues, first around falsities on the statements of disturbances, Judge Bartle's reasoning was that there was an insufficient link ledged between A and C and our claimants. How can we affirm on that basis given the multiple allegations of a close relationship between the companies? Well, this is where I think the factual context of this case is so important to understand. A number of your Honor's questions alluded to that. Um, AAMC was formed in 2012 and spun out of the company, AlphaSource, for both solutions at the end of 2012. It was formed for a specific purpose. A sister corporation was formed and spun out of ASPS at the same time, a corporation called AlphaSource Residential, which I'll call Resi. Those corporations are very different from Auckland and ASPS. They have a specific purpose, which was to assemble single family rental properties and the vehicle through which Resi was going to own those properties was through acquiring portfolios of non-performing loans. During the last period, Resi acquired approximately 16,000 non-performing loans and that's in the record at let me see if I can get that quickly joint appendix 393 so in 2013 Resi acquires 8,531 non-performing loans. In 2014 Resi acquires 7,772 non-performing loans. Our client at AAMC is the investment manager for a small, small company and the plaintiffs themselves allege that at the same time Auckland was servicing 2,861,918 work loans. That's in the proposed amended complaint at paragraph 70. And what the plaintiffs have never done, never done because I don't believe there's any basis to do so, is to allege that the servicing problems that Auckland experienced in 2014 had any role or any adverse impact on AAMC. So the plaintiffs have not been able to draw the linkage that Judge Barber dismissed the initial complaint for and they didn't cure that in the proposed amended complaint. So therefore the statements that they challenge with respect to AAMC are not false. There's no adverse effect on AAMC's ability to manage Resi or adverse effect on the 16,000 non-performing loans out of the 2.8 million that Auckland is servicing. But aren't those different issues? The number or percentage of non-performing loans that are acquired from Auckland versus who is servicing all of the loans of Resi. And the representation of the complaint is that all of Resi's loans are being serviced by Auckland. They also have been purchased from Auckland as I understand their... So I wasn't speaking to... Maybe I misheard your question, Your Honour, and I apologise. The issue is, have they pleaded a false statement? Which is what I heard Your Honour ask about. And to have there be a false statement there has to be some adverse impact from the Auckland inability to service on what AAMC was doing in terms of advising Resi. During the class period, Resi acquired loan portfolios, as Your Honour just pointed out. They acquired those loan portfolios from third parties independent of Auckland. So the issue of who they bought the loans from is irrelevant, with the exception that the plaintiffs have a false allegation on their complaint that says Resi was dependent on Auckland for the source of loans. Not true. The loans that Resi acquired were purchased from third parties with the exception of an initial portfolio of 460. But the... To have there be a false statement there has to be an adverse impact on Resi from Auckland's inability to service the loans properly. There's no evidence of that. There's never been a suggestion that that was the case. What they try to do is say because Auckland had problems with managing 2,800,000 loans, that that must have had a problem with Resi. Well they're pointing, and this is at the pleading stage, they're pointing to corrective disclosures albeit made by third parties not AAMC necessarily but correct what they're calling corrective disclosures that lead to a drop in stock price and isn't there a false statement theory that confidence, investor confidence by representations about the excellent servicing abilities of Auckland that that both inflated the price of AAMC stock and when those corrective disclosures were made there was no longer that public confidence it caused a loss in stock price. What's wrong with that theory as pleaded at his stage at the remaining stage? So you're on a move to correct the disclosures and away from false statements and during the questioning of the Appellant's Council the question was asked, what were the false statements? And he pointed to two one of them was a statement that our business strategy is working and we're adding loans being serviced by Auckland and now the source portfolio is you know, running the rental properties that we're gradually acquiring. There's nothing false or misleading in that statement in the first quarter of 2013. The second one he pointed to was a statement from the beginning of 2014 where we believe that the Auckland portfolio would have a competitive advantage. There's nothing that suggests that compared to other servicers that the portfolio that Auckland, the servicing capability that Auckland provided wasn't superior to others. We put before Your Honour and it's entirely appropriate given the allegations they put in the National Mortgage Servicing Settlement. So, Auckland was the fourth largest servicer of mortgages in the United States. There were five other big ones and those five other big ones had the exact same kind of problems and settled for $25 billion in 2012 when Auckland settled for far, far less than that at the end of 2013. And the issue of settling in 2013 is actually provident to the absence of a false statement because at the time the CFPB settled with Auckland again we're talking about Auckland we're not talking about any adverse effect of AMC but you're trying to draw you're suggesting you wanted an answer to the linkage question. Nothing in that CFPB settlement said that Auckland couldn't proceed to service or acquire more loans. So there's no inference to draw from that settlement that there was an adversability of Auckland to service the Resley portfolio. At what point, if any, would Auckland be required to disclose vulnerabilities and liabilities in Auckland's business? So we're talking about Auckland in that sense. Not AMC. When would AMC be required to disclose the vulnerabilities that Auckland has? So at the time when AAMC concludes that Auckland's servicing is no longer superior to other potential servicers and concludes that that's no longer the situation then it should step back and say it may be that Auckland is having difficulties and we can't do that. But that's beyond the end of this class period because the class period ends in January 2015 and the settlement with the New York state authorities was at the end of December 2014. And there's no public statement that AAMC makes during this period. And between December and January that would cause that. The other thing that Judge Fisher would like to point out is the issues that Auckland was having with the regulators in both the CFPB at the end of 2013 with the state of New York and our division of financial services were being made public simultaneously. And this gets back to the correct disclosure point that perhaps you were looking to in this language. So yes, there's some there's some depending on what the announcement is some decline in the price of the AAMC stock when there's an issue with Auckland. But that doesn't mean that that's a corrective disclosure with respect to AAMC. The law requires much more than that. The law requires that there be a false statement made by AAMC and then some revelation that the statement that AAMC made was false. There's none of that. There's just this halo effect if you will, that because Auckland goes down, AAMC goes down. And as Judge Fisher points out on a number of these occasions, the stock went back up. We can all agree that statements of optimism are not going to be actionable. But some of the statements that are pleaded in the complaint include from the 2013 campaign for example representing as superior to other services other servicers the capabilities of Auckland in terms of cost, management experience, technology infrastructure and platform scalability. Isn't that sufficiently specific as to the nature of the superior services being provided to qualify as a false statement and then move beyond that to whether there's a linkage. So Your Honour alluded to the decisions from Judge Demetrius in the Southern District of Auckland involving Auckland itself and one involving HLSS. I don't think it's really relevant to our discussion today. In both of those rulings he looked at those issues and said no that's puffery, that is not actionable. So I don't believe the we believe we're superior than listing the four dimensions takes it out of the general non-actionable character. I think that's the law of the circuit and the Advanta decision in particular when claiming to be superior was held to be inactionable puffery. There's cases that we cited puffery from other courts of appeals to the same effect. So I don't think that's different in kind than what other courts have held to be non-actionable. I understand we wouldn't reach the issue if we agreed with you on falsity but assume we don't. You seem to be arguing that the corrective disclosure needed to be made by AAMC itself to qualify as a corrective disclosure. So that is the purist paradigm. I don't think that if the inspector general of the United States were to come down and say AAMC was committing fraud that could be a corrective disclosure even though it's not made by AAMC. So if you were to say that narrowly I didn't mean it that way but it does require that there be a corrective disclosure. It has to correct something that AAMC said or did that was false. That's the linkage that the plaintiffs failed to leave. How about on the related party transaction? Let me start with one thing on the related party transaction. Counsel said that there was a related party transaction that he directed to paragraph 104 of the complaint which was a $65 million transaction involving Alcatraz portfolio solutions, ASPS. That is not AAMC. There has never been a conflicted transaction identified by any regulator, by counsel here, that was done and not disclosed. There's just zero. So what they ask you to do is to contravene in my opinion, what this court has said time and time again which is that you're not, and this is where Judge Thompson in the Martin v. Reddy case in my opinion, decided the decision wrongly. She allowed an inference that there had been an improper transaction, even though the plaintiff in that case did not plead one, did not find one, and she said it would be reasonable to infer that that might exist. Well, I think that runs afoul of a continuous line of precedent for this court and I would, the foundational language is from the court's decision in California Public Employees Retirement System v. Chuck 394 F. 3rd 126 of 145. Unless plaintiffs in securities fraud actions allege facts supporting their contention of fraud with the requisite particularity mandated by Rule 9b in the PSLRA, they may not benefit from inferences flowing vague or unspecific allegations, inferences that may have been justified under a traditional 12b-6 analysis. And this court has rigorously applied that concept to reject unsupported allegations, and I would point the court's attention to the following cases. OFI Asset Management 834 F. 3rd 41 at 498. In Re Alpharm 372 F. 3rd 137 at 150. OGSC Partners Williams v. Washington 368 F. 3rd 228 at 240. And the court's more recent decision, Williams v. Globus-Mackel 869 F. 3rd 235 at 244. Even if we agree with you that it is not appropriate to infer that there was a specific related fraud transaction with AMC because of others, does that really prove a falsity here where the representations at issue are that AMC followed policies, procedures, and practices to avoid potential conflicts with respect to dealings with all of the entities? In other words, the representation as to having policies in place and the investor confidence that that seeks to instill seems to go to something broader than a specific transaction with AAMC, but rather that among the related parties investors can be confident that there are policies in place, including the chairman recusing himself, where there are related transactions. So, with all due respect, I think if you read the statements that are challenged that AAMC made with respect to their conflict with transactions, it is speaking to its transactions with other companies. It's not saying we can release the entire universe of other companies and what they may or may not do. It's saying, we, AAMC, have policies and procedures in place that we follow, and we will put those in place, but we recognize that there are conflicts. That's what the disclosures from AAMC get. To then infer that there was a breach of that, a false statement with respect to that, based on the existence of an issue between ASPS and Auckland, is not a reasonable it's beyond what the PSLRA permits. What do we make of the NYS DFS consent order that says that the agency uncovered a number of conflicts of interest between Auckland and four other public companies, all of which are chaired by Mr. Hood. AAMC appears to be one of those four companies. So, I want to make sure that I'm looking at the correct reference. This is in the December 2014 order. This is a Joint Appendix 625. This is the allocation. Bear with me. Yes, I can do it. Yes, I can do it. So, that order in its full text is in the record. We put that on the record in connection with our motion to dismiss the first complaint. There is no elucidation, no exemplar, no specific with respect to AAMC ever has been brought forward by that regulator or by any other regulator with respect to an improper and wicked transaction involving AAMC. Why isn't that fairly bad as revealing an actual conflict as opposed to, as I take it, a potential conflict? So... Sorry, Your Honor. I think there's a legal principle where language, which then goes on and is described with examples, modifies the general language, and when you read this order and they go forward and describe what they found, there is not a single item that evidences a conflicted transaction involving AAMC. This language... So if they don't think that's fairly read the way Your Honor suggests, it could be read. Had there been any such, they would have put it in the order. They did not put that in the order. Questions? So let me just... I know you're... My apologies. We'll give you a minute to wrap up. Okay. I guess... I just wanted to touch briefly on... There's no language showing any false statement by AAMC, whether it be with respect to the awkward servicing or with respect to conflicted transactions. Independently, the judge found the loss causation, and then, as we pointed out in our brief, the facts pleaded in this complaint come nowhere close to pleading a strong intrusive settlement. And so the case should be... The denial of the leave to amend should be affirmed on a number of grounds, but it's most fundamental because Judge Bartle got it right. The plaintiffs did not correct the fundamental pleading defect. They didn't appeal from his ruling, dismissing their complaint. And... The court should affirm to the court. Thank you. Mr. Green, we're running out of time on both sides, but I'll give you the next word. Thank you, Your Honor. The court is very indulgent in my opinion. I appreciate it. I'll try to be brief. I think what Judge Thompson understood and what has come out of it today is I read all the cases in my... AAMC was not a defendant in those cases, though. Correct. And this is what I'm going to make. And that is that this case is really neither efficient or foul compared to the third circuit precedents in that you've got all these intensely close relationships between these companies as the regulators determined and as is alleged. In fact, it's not disputed with one defendant as chairman of all of them. And the case needs to be seen in that light. And the linkage, as I understand it, it's not really disputed. Judge Barla found, when I read page 32, that the linkage had been alleged in light of that interrelationship but you need to give me the false or misleading statements as to AAMC and I've already mentioned that. So why hasn't it been done? So I won't believe that. So the fact that this is all intertwined companies, I think it's differentiates this case in some ways from and really isn't like other securities fraud cases that I read that this court has decided to talk about. If I understood counsel correctly, he said that the complaint was just simply wrong on the fact that it is alleged. And even in a securities case with the some of the highest pleading standards, the facts are dated as true. I mean, that's a fact disputed for summary judgment for later. And I respect that. I think that's a great flag. We have some disputed facts here that warrant this case going forward. Lost validation. Again, this is Rule 8. Pleading and juror requires simply some indication of loss. And I think the complaint has alleged that to the best of the proceedings. And my last point is I think it's a very fair description to say that in light of how this case was treated below, and the rules favoring the men that the plaintiff appreciates this court's particular scrutiny of the decision. Let me ask you this question. It's sort of a variation of what I asked you before on futility, but if we said that we should send this back to allow you to amend your complaint, which Judge Bortles already looked at and said wasn't sufficient, aren't we just going to end up with another grant of a motion to dismiss on the amended complaint? I mean, I don't see that that's going to advance the ball, particularly when he says, you know, you're fourth by the apple. Is it going to get you any further? And it seems to me that this is classic futility. Well, I think that's how the pleading stage works, and it is, but the Borrelli case was reiterated in the Shand versus Fowler contemplates guidance from the district court. I'm not saying the district court ought to tell us how to plead the case. The district court told us what was wrong with the complaint, this is what you need to fix, and there was an attempt to do that, and had that complaint been filed, the defendants would have had the right to dismiss it, as I'm sure they would have done, and we would have had another round of briefing on that, and that's been routine in many cases in the conspiracy. It just seems to me, in his order, July, in his July order, he looked at your fourth bite, and he said, it's not going to advance the ball. And respectfully, I think the reason stated, he is incorrect about that. That's to say you disagree with his assessment of what, in essence, he used as a failure to state a claim. And while it may be couched in terms of utility ruling, he did look at the merits and that's what you're asking us to do as well when it comes to what is stated in your complaint. Ultimately, the complaint states a lot of the claims, and of course it's so old, it's in the case file. So, just getting to that point again, excuse me if you can, I'm having a little bit of trouble trying to ascertain where this case would be. We do have plenty of reviews, so we have to look at both the second amended complaint and the proposed amended complaint. And we have to determine whether or not there was anything there to get past the but we don't have that complaint in front of us technically in this case that you're trying to get that you were asking to have the right to amend. Okay. So, you're still going to be back in the district court with a motion to dismiss filed, correct? If that were to be the holding, that's correct. But again, and if Judge Bartle just says, I already ruled on this, and I'm dismissing this, we would then have your amended complaint, your fourth amended complaint, in front of us to review in a plenary fashion. Is that right? I don't know whether it would be a fourth amended complaint. Another potential resolution is not to address the interim, because the district court didn't. Not to what? Not to address the interim, because the district court did not address the interim even after futility in its futility determination. So, the district court should address that issue because we proved that in a somewhat awkward posture on appeal. But in evaluating futility, you're not suggesting that there are additional allegations that you would plead in the amended complaint. You were arguing that it's not people on the basis of the amended complaint that you did agree with others. That is correct. Thank you. Thank you, both counsel for your excellent argument. We really appreciate it, and we understand this is a complex and important case. Thank you for the briefing and your argument. We'll take the case.